# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-038

Filing Date: June 25, 2009

Docket No. 30,715

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

FRANK O. GARZA,

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen Bridgforth, District Court Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Pickett Law Firm, L.L.C.
Mark L. Pickett
Mollie C. McGraw
Las Cruces, NM

for Respondent

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Amicus Curiae
New Mexico Public Defender

## OPINION

**MAES, Justice.**

{1}    In this Opinion we review our speedy trial jurisprudence and abolish the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is "presumptively prejudicial." Because Defendant has not shown any particularized prejudice that is cognizable under the constitutional right to a speedy trial and the weight of the other factors in the analysis do not overcome

Defendant's failure to show prejudice, we reverse the judgment of the Court of Appeals and affirm Defendant's conviction and sentence.

**{2}** Though inapplicable in the present case, we also update our guidelines for determining the length of delay necessary to trigger the speedy trial inquiry to twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases. We emphasize that these guidelines are merely thresholds that warrant further inquiry into a defendant's claimed speedy trial violation and should not be construed as bright-line tests dispositive of the claim itself.

## I. FACTS AND PROCEDURAL HISTORY

**{3}** Frank O. Garza (Defendant) was arrested late on June 28, 2006 for aggravated DWI and failure to maintain a traffic lane. The State filed a criminal complaint in magistrate court on June 29, 2006, and Defendant was released on the same day. The total amount of time Defendant spent in jail was two hours, from 2:35 a.m. to 4:24 a.m.

**{4}** The case remained in magistrate court, without apparent progress toward a trial, for four months. On November 2, 2006, the State refiled the charges in the Third Judicial District Court and the following day dismissed the case without prejudice. Defendant made his first and only speedy trial demand on November 13, 2006 as part of his waiver of arraignment and plea of not guilty.

**{5}** In the Third Judicial District Court, the case initially was assigned to Judge Bridgforth, but the case was reassigned and the trial date set and reset several times. The case was reassigned to Judge Murphy on January 19, 2007 and trial was set for March 8, 2007. Judge Murphy recused himself on February 8, 2007 and the case was reassigned to Judge Driggers. The trial was reset for April 27, 2007 before Judge Driggers. That trial date was vacated because the case was reassigned, once again to Judge Bridgforth, on February 22, 2007. Finally, the trial was set for May 4, 2007 before Judge Bridgforth.

**{6}** Defendant filed a motion to dismiss on April 26, 2007, claiming that his right to a speedy trial had been violated. The district court denied the motion, finding, in pertinent part,

> that a four month delay in Magistrate Court before removal to District Court weighs against the State. This is a simple case and the additional delay, even if it is sometimes the Courts' own heavy trial docket, weighs slightly against the State. The case is now just past nine months which triggers the presumption of prejudice. Defendant has asserted his right to speedy trial. Defendant has suffered some actual prejudice in the form of restrictions imposed by pre-trial conditions of release and stress, but the Court feels this is not unusually great and weighs slightly against the State.

Defendant entered a conditional guilty plea on May 4, 2007 to aggravated DWI, contrary to NMSA 1978, Section 66-8-102(D)(1) (2005, prior to amendments through 2008), and failure to maintain a traffic lane, contrary to NMSA 1978, Section 66-7-317, reserving the right to appeal the district court's denial of his motion to dismiss based on a violation of his constitutional right to a speedy trial.

**{7}** The Court of Appeals reversed the district court in a memorandum opinion, which held that the ten-month and six-day delay between Defendant's arrest and the final trial setting, violated his constitutional right to a speedy trial. *State v. Garza*, No. 27,731, slip op. at 2 (N.M. Ct. App. Oct. 5, 2007). The Court's opinion relied on the "presumption of prejudice" created by the delay, stating that "[e]ven though Defendant had just barely passed the nine-month threshold for triggering the presumption of prejudice, application of the remaining factors did not rebut this presumption." *Id.* The Court concluded, "Because the factual findings in this case tip all of the four factors in favor of Defendant, we do not believe that it is necessary to engage in an in-depth balancing that might occur when one or more factors weigh against a defendant. Accordingly, we reverse." *Id.* at 3.

**{8}** We granted the State's petition for writ of certiorari, which raises one issue: whether the Court of Appeals erred by holding that Defendant's right to a speedy trial was violated because the Court essentially applied a bright-line rule that nine months was the maximum length of delay permissible for a simple case. We also asked the Office of the Public Defender to file an amicus brief, addressing the issue of whether we should change the current guidelines for determining when the length of delay becomes "presumptively prejudicial," and we permitted the State to respond to that issue. Because we conclude that our holding on this latter issue does not apply to the present case, we address it separately.

## II. WHETHER THE COURT OF APPEALS ERRED BY HOLDING THAT DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED

**{9}** The State claims that the Court of Appeals erred in concluding that Defendant's right to a speedy trial was violated by a ten-month and six-day delay. The State argues that "[t]he Court of Appeals' analysis is most at fault in its treatment of prejudice and presumed prejudice," because "[i]f a delay of one month over the presumptively prejudicial minimum—together with common bond restrictions—were sufficient, the *Barker* test would become essentially a bright-line rule." We agree with the State that, in cases such as the present one in which all of the factors from *Barker v. Wingo*, 407 U.S. 514 (1972), appear to weigh neutrally or minimally in the defendant's favor, the threshold determination of "presumptively prejudicial" delay may become essentially a bright-line rule. Because we perceive this result as contrary to the purpose of the speedy trial right, we undertake a review of our speedy trial case law and attempt to clarify its application.

### A. Purpose of the Speedy Trial Right

**{10}** The right to a speedy trial is a fundamental right of the accused. *Barker*, 407 U.S. at 515. The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967), provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI; *see also* N.M. Const. art. II, § 14.[1]

**{11}**    The speedy trial right, however, escapes precise definition.  "The speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.'"  *Vermont v. Brillon*, __ U.S. __, 129 S. Ct. 1283, 1290 (2009) (citation omitted).  "It is consistent with delays and depends upon circumstances.  It secures rights to a defendant.  It does not preclude the rights of public justice."  *Barker*, 407 U.S. at 522 (internal quotation marks and citation omitted).  Though speed is an important attribute of the right, "[i]f either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed."  *Frankel v. Woodrough*, 7 F.2d 796, 798 (8th Cir. 1925).  As the United States Supreme Court stated in *Barker*, "It is . . . impossible to determine with precision when the right has been denied.  We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate."  *Barker*, 407 U.S. at 521.  Therefore, the substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case.

**{12}**    *Barker* recognized that the right to a speedy trial is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused," because there is a societal interest in bringing an accused to trial.  *Id.* at 519.  However, "[t]he Bill of Rights . . . does not speak of the rights and interests of the government."  Richard Uviller, *Barker v. Wingo: Speedy Trial Gets a Fast Shuffle*, 72 Colum. L. Rev. 1376, 1378 (1972); *see* 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.1(b) (3d. ed.  2007) ("[I]t is rather misleading to say . . . that this 'societal interest' is somehow part of the right.").  The heart of the right to a speedy trial is preventing prejudice to the accused.

> [T]his constitutional guarantee has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system:  (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself.

*Smith v. Hooey*, 393 U.S. 374, 377-78 (1969) (footnote, internal quotation marks and citation omitted).  Therefore, the speedy trial right requires actual and articulable deprivation of a defendant's constitutional right.  *Barker*, 407 U.S. at 530.

---

[1]    Article II, Section 14 of the New Mexico Constitution provides:

> In all criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel; to demand the nature and cause of the accusation; to be confronted with the witnesses against him; to have the charge and testimony interpreted to him in a language that he understands; to have compulsory process to compel the attendance of necessary witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

We have not previously decided, and Defendant does not argue here, whether New Mexico's speedy trial guarantee should be interpreted differently than the Sixth Amendment.  *See State v. Maddox*, 2008-NMSC-062, ¶ 6, 145 N.M. 242, 195 P.3d 1254.

**{13}** Violation of the speedy trial right is only determined through a review of the circumstances of a case, which may not be divorced from a consideration of the State and the defendant's conduct and the harm to the defendant from the delay. *Id.* Accordingly, we have adopted the balancing test created by the United States Supreme Court in *Barker*, which delineates the following analytical framework for evaluating a claimed speedy trial violation:

> In *Barker*, the United States Supreme Court created a balancing test, in which the conduct of both the prosecution and the defendant are weighed. The Court identified four factors: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated.

*State v. Maddox*, 2008-NMSC-062, ¶ 7, 145 N.M. 242, 195 P.3d 1254 (internal quotation marks and citation omitted). *Barker*'s formulation "necessarily compels courts to approach speedy trial cases on an ad hoc basis." *Barker*, 407 U.S. at 530. This analysis specifically rejects inflexible, bright-line approaches to analyzing a speedy trial claim. *Id.* at 529-30.

**{14}** In adopting the *Barker* analysis, this Court has similarly rejected bright-line analyses of the right to a speedy trial. *Barker*, however, was far from the model of clarity and has not provided a comprehensive analysis of this "slippery" right. Consequently, our courts have endeavored to adapt the *Barker* analysis to the unique factual circumstances presented in each case. In the present case, we revisit certain aspects of the speedy trial right in light of *Barker*'s extensive progeny with a focus on the underlying purpose of *Barker*, to provide a functional analysis of the right to a speedy trial.

## B. The Length of Delay: "Presumptively Prejudicial" Delay

**{15}** *Barker* is ambiguous as to what role the length of delay plays on the balancing test as a whole. *See id.* The extent of *Barker*'s discussion of this issue is as follows:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Id.* at 530-31 (footnote omitted). The Court's use of the phrase "presumptively prejudicial delay" has been the source of confusion, because it suggests that this threshold determination creates a presumption that may be determinative, but such a presumption is at odds with *Barker*'s ad hoc, flexible balancing test. *Id.* at 530. The issue in the present case is whether, and to what extent, a determination that the length of delay is "presumptively prejudicial" carries forward into the balance of the factors and the determination of whether a defendant's right to a speedy trial has been violated.

**{16}** With *Barker*'s limited guidance, our cases have attempted to decipher the function of "presumptively prejudicial" delay on the overall inquiry into whether a defendant's right

5

has been violated. In *Zurla v. State*, this Court held that a "presumptively prejudicial" length of delay creates an overall presumption that the defendant's right to a speedy trial has been violated. 109 N.M. 640, 646, 789 P.2d 588, 594 (1990). Therefore, "[o]nce the defendant has demonstrated presumptively prejudicial delay and thus triggered the *Barker v. Wingo* analysis, the presumption of prejudice does not disappear. Rather, the burden of persuasion rests with the State to demonstrate that, on balance, the defendant's speedy trial right was not violated." *Id.*

**{17}** *Work v. State*, 111 N.M. 145, 803 P.2d 234 (1990), a plurality opinion, called the holding in *Zurla* into question. In *Work*, the plurality followed *Zurla* and explicitly rejected the function of the presumption of prejudice as "merely a 'triggering mechanism' that necessarily brings into play an inquiry of the other three *Barker* factors." *Work*, 111 N.M. at 147, 803 P.2d at 236. The plurality argued that the presumption of prejudice "'carries forward' and serves to shift to the [S]tate the burden to demonstrate that, on balance, the defendant's speedy trial right has not been violated." *Id.* Justice Ransom, in a specially concurring opinion, "agree[d] with the principles of the continuing presumption of prejudice, weight, balancing, and burdens as relied upon in the opinion announced by the Court today," but concluded that the presumption of prejudice was entitled to little weight under the facts of that case. *Id.* at 149, 803 P.2d at 238 (Ransom, J., specially concurring).

**{18}** Justices Baca and Wilson dissented from the *Work* plurality. Writing for the dissent, Justice Wilson argued that *Zurla* erroneously "carried forward" the presumption of prejudice. *Work*, 111 N.M. at 152, 803 P.2d at 241 (Wilson, J., dissenting). The dissent further argued that *Barker* offered no support for the plurality's characterization of the presumption of prejudice, because *Barker*'s balancing test "evenhandedly weigh[s] each piece of evidence without a compelling presumption tipping the scales one way or another." *Work*, 111 N.M. at 153, 803 P.2d at 242. On this issue, Justice Wilson concluded:

> In my view, the better rule is to hold that the question of actual prejudice is a factor which must be determined on balance. If a defendant brings forth evidence of prejudice, the [S]tate will have the burden of rebutting such evidence. If no evidence of prejudice is offered, then the scales are balanced. In this latter situation the question of actual prejudice would be neither for nor against either party, but neutral.

*Id.*

**{19}** *Salandre v. State*, 111 N.M. 422, 806 P.2d 562 (1991), resolved the disagreement expressed in *Work*. *Salandre* cited the *Work* plurality with approval and reaffirmed the holding in *Zurla*. *Salandre* reiterated that

> "[p]resumptively prejudicial delay" refers to prejudice to the fundamental right to a speedy trial, not to specific prejudice covered by the fourth [*Barker*] element, much less simply to impairment of the defense at trial. . . . [O]nce the defendant demonstrates existence of presumptively prejudicial delay, "the burden of persuasion rests with the [S]tate to demonstrate that, on balance, the defendant's speedy trial right was not violated."

*Id.* at 427, 806 P.2d at 567 (quoting *Zurla*, 109 N.M. at 646, 789 P.2d at 594). By holding that "presumptively prejudicial" delay creates the presumption that a defendant's right to a speedy trial has been violated, *Zurla*, *Work*, and *Salandre* require that the State affirmatively

sway the balance of factors in its favor, otherwise the reviewing court must conclude that a defendant's right to a speedy trial has been violated. Under this rule, where the State fails to meet its burden, the defendant is entitled to a dismissal of all charges based solely on the threshold determination that the length of delay was "presumptively prejudicial."

{20} While other courts and commentators have struggled with this issue, the overwhelming majority have rejected an interpretation of *Barker* that creates the kind of presumption that our cases have adopted. Uviller, *supra*, at 1384-85. ("Whether or not such a shift in the vital burden is wise, it seems clear that it is unintended by the Court. Rather, it is likely that the choice of the term 'presumptively prejudicial' in the duration discussion was simply inadvertent. Probably, the Court meant to say simply that a claim of denial of speedy trial may be heard after the passage of a period of time which is, prima facie, unreasonable in the circumstances."). Though *Barker*'s limited treatment of this issue leaves room for various interpretations, no federal circuit courts have adopted a rationale similar to ours, in which the determination of presumptive prejudice creates a presumption that the defendant's right has been violated. *See* 5 LaFave et al., *supra*, § 18.2(b) ("The reference to 'delay which is presumptively prejudicial' contributes to this confusion, but viewing the case in its entirety it seems fair to say that this phrase does not mean a period of time so long that it may actually be presumed the defense at trial would be impaired. Nor does it mean that once a sufficient time has been shown the prosecution has the burden of establishing that in fact there was no prejudice." (footnote omitted)). The Circuit Courts of Appeals uniformly treat the threshold inquiry of whether the delay is "presumptively prejudicial" as merely a triggering mechanism and do not carry forward any presumption based on this determination. *See United States v. Harris*, __ F.3d __, 2009 WL 1065970, 6 (5th Cir. 2009); *United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009); *United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) (holding that rather than carrying prejudice forward from "presumptively prejudicial" delay, prejudice to the defendant may only be presumed "'when the delay is great and attributable to the government'" (quoting *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992)); *United States v. Oriedo*, 498 F.3d 593, 597-600 (7th Cir. 2007); *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006); *United States v. Ingram*, 446 F.3d 1332, 1336-37 (11th Cir. 2006) (holding that the threshold determination of "presumptively prejudicial" delay merely "entitle[s the defendant] to a presumption of prejudice sufficient to proceed with the other considerations in the *Barker* analysis"); *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("The first factor, length of delay, functions as a gatekeeper."); *United States v. Trueber*, 238 F.3d 79, 87 (1st Cir. 2001); *United States v. Carini*, 562 F.2d 144, 148-49 (2nd Cir. 1977) ("[L]ength alone is not dispositive, the length of the delay . . . does unquestionably 'trigger' our review of the three other factors enumerated in *Barker* and our consideration of such other circumstances as may be relevant." (internal quotation marks and citations omitted)); *United States v. Jones*, 524 F.2d 834, 849 (D.C. Cir. 1975); *Ricon v. Garrison*, 517 F.2d 628, 632-33 (4th Cir. 1975) (replacing "presumptively prejudicial" delay with "sufficiently unusual delay").

{21} In *Zurla*, *Work*, and *Salandre*, we considered only *Barker*'s ambiguous language and failed to consider the manner in which the rule announced in *Barker* consistently has been applied by the Circuit Courts of Appeals and interpreted by scholarly commentators. In light of the overwhelming consensus among the federal Circuit Courts of Appeals and our policy of providing a functional analysis based on the facts and circumstances of each case, we abolish the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is "presumptively prejudicial." We hold instead that a "presumptively prejudicial" length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors.

**{22}** We, therefore, modify the standards set forth in *Zurla*, *Work*, and *Salandre* to the extent they are inconsistent with this holding. However, where the defendant proves actual prejudice, *see infra* Part II.E, the State retains its burden of persuasion on the ultimate question of whether the defendant's right to a speedy trial has been violated.

**{23}** If a court determines that the length of delay is "presumptively prejudicial," then it should consider the length of delay as one of four factors in the analysis, none of which alone are sufficient to find a violation of the right. *Barker*, 407 U.S. at 533. As discussed in Part III of this Opinion, we are enacting new guidelines to aid district courts in determining when the length of delay may become "presumptively prejudicial." However, for purposes of this case, because the district court relied on our prior guidelines, we review the court's holding according to those guidelines. The district court found that the present case is a "simple" case in which nine months was considered "presumptively prejudicial." *Maddox*, 2008-NMSC-062, ¶ 9. Therefore, the delay of ten months and six days was sufficient to trigger inquiry into the *Barker* factors.

**{24}** Considering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the State. The delay in this case scarcely crosses the "bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, 652 (1992). Therefore, the delay was not extraordinary and does not weigh heavily in Defendant's favor. *See id.* at 657-58 (holding that six years of delay attributable to the Government's negligence "far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays 'extraordinary'"); *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (holding that a three-year and nine-month delay was too short to weigh heavily in the defendant's favor); *United States v. Bergfeld*, 280 F.3d 486, 489-91 (5th Cir. 2002) (holding that delay over five years weighed heavily in the defendant's favor); *Shell*, 974 F.2d at 1036 ("Five years delay attributable to the government's mishandling of Shell's file, like the eight year delay in *Doggett*, creates a strong presumption of prejudice.").

## C. Reasons for the Delay

**{25}** "Closely related to length of delay is the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531. "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Maddox*, 2008-NMSC-062, ¶ 13. *Barker* identified three types of delay, indicating that "different weights should be assigned to different reasons" for the delay. *Barker*, 407 U.S. at 531. First, *Barker* held that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* A defendant is more likely to prevail "if [the defendant can] show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial." *Doggett*, 505 U.S. at 656. "*Barker* stressed that official bad faith in causing delay will be weighed heavily against the government," and excessive bad-faith delay may present an overwhelming case for dismissal. *Id.* (citation omitted).

**{26}** Second, *Barker* distinguished intentional delay from negligent or administrative delay, and held that "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong

8

side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. The degree of weight we assign against the State for negligent delay is closely related to the length of delay: "[O]ur toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial." *Id.* at 657 (citation omitted).

**{27}** Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531; *see Doggett*, 505 U.S. at 656 ("Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down."). Accordingly, we balance the reasonableness of the manner in which the State has moved a case toward trial "against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Doggett*, 505 U.S. at 656.

**{28}** The record reflects that the delay in the present case was negligent. The State asserts that the delay of four months in which this case sat in magistrate court before the State dismissed the charges and refiled in district court, were predicated on this Court's opinion in *State v. Heinsen*, 2005-NMSC-035, 138 N.M. 441, 121 P.3d 1040. In *Heinsen*, we held that, generally, the State will receive a new six-month period under Rule 5-604 upon dismissing a case from magistrate court and refiling in district court, unless the State lacks "a good and sufficient reason for doing so." *Id.* ¶ 25. However, as it concerns the speedy trial right, the State's discretion to dismiss a criminal case in magistrate court and reinstate charges in district court does not justify the delay. There is nothing in the record to suggest that the State caused this four-month delay intentionally or in bad faith. Therefore, we hold that this delay was negligent and weighs against the State.

**{29}** The remainder of the delay is attributable to the multiple reassignments of judges in the district court. This delay falls within the administrative burdens on the criminal justice system, such as overcrowded courts, *Barker*, 407 U.S. at 531, congested dockets or the unavailability of judges, *State v. Davis*, 474 A.2d 776, 778-79 (Conn. 1984), or an understaffed prosecutor's office, *Strunk v. United States*, 412 U.S. 434, 436 (1973). For purposes of analyzing a speedy trial claim, this type of delay is considered negligent delay and is weighed against the State accordingly. *Id.*

**{30}** Because the delay was negligent, the extent to which it weighs against the State depends on the length of the delay. As described above, the delay in this case extends only slightly beyond the threshold to trigger the speedy trial inquiry, and therefore, is not extraordinary. Accordingly, because the delay was negligent but not protracted, this factor weighs only slightly in Defendant's favor.

### D. Assertion of Defendant's Right

**{31}** In *Barker*, the United States Supreme Court rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right." *Barker*, 407 U.S. at 528. Instead, the Court held that "the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* This factor is closely related to the other *Barker* factors, because "[t]he strength of [the defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that [the defendant] experiences." *Id.* at 531.

9

**{32}** Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted. *Maddox*, 2008-NMSC-062, ¶ 28. Thus, we accord weight to the "frequency and force" of the defendant's objections to the delay. *Barker*, 407 U.S. at 529. We also analyze the defendant's actions with regard to the delay. *See United States v. Sarvis*, 523 F.2d 1177, 1182 (D.C. Cir. 1975) (mitigating the force of the defendant's assertions of his right where motions asserting the right "followed closely other defense motions which were bound to slow down the proceedings," such as a motion for additional time to file motions, a motion for appointment of new counsel, and a motion to reset the trial date); *Sisneros v. State*, 121 P.3d 790, 800 (Wyo. 2005) (weighing the third *Barker* factor neutrally where the defendant demanded a speedy trial throughout the proceedings, but "also engaged in procedural maneuvers which had the result of delaying the trial"). *But see McNeely v. Blanas*, 336 F.3d 822, 831 (9th Cir. 2003) (holding that the defendant's two successful motions "disqualifying the trial court at precisely the point when the case was ready for trial" had merit, and therefore, did not harm the defendant's assertion of his right). Rights under this amendment are fundamental in nature so that a failure to assert them does not constitute waiver, but the timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as afterthought. *United States v. Netterville*, 553 F.2d 903, 914 (5th Cir. 1977).

**{33}** It is necessary, therefore, to closely analyze the circumstances of each case. For example, a court should assign "different weight to a situation in which the defendant knowingly fails to object, from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed." *Barker*, 407 U.S. at 529. Similarly, a defendant "cannot be blamed for not invoking his right to a speedy trial before" he was aware of the charges against him. *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003).

**{34}** In the present case, Defendant's single demand for a speedy trial, preceding his motion to dismiss, tucked within the waiver of arraignment and not guilty plea, was sufficient to assert his right. This assertion was not especially vigorous nor was it mitigated, however, by any apparent acquiescence to the delay on Defendant's part. Therefore, this factor weighs slightly in Defendant's favor. *See Maddox*, 2008-NMSC-062, ¶ 31 ("We weigh this factor slightly in Defendant's favor, but note that Defendant's assertions were neither timely nor forceful.").

## E. Prejudice to the Defendant

**{35}** "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* ¶ 32 (internal quotation marks and citation omitted). As to the first two types of prejudice, "[s]ome degree of oppression and anxiety is inherent for ever[y] defendant who is jailed while awaiting trial." *Id.* ¶ 33 (alterations in original) (internal quotation marks and citation omitted). Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue. *Id.* The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration. *Barker*, 407 U.S. at 532-33 ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational

10

or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." (footnote omitted)); *see also Hartridge v. United States*, 896 A.2d 198, 227 (D.C. 2006) ("[I]t cannot be denied that two-and-one-half years of pretrial incarceration . . . one's life on indefinite hold, waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the Speedy Trial Clause was meant to avoid."); *State v. Urban*, 2004-NMSC-007, ¶ 17, 135 N.M. 279, 87 P.3d 1061 (holding that where the defendant was incarcerated on other charges he "was not subject to oppressive pretrial incarceration"); *Berry v. State*, 93 P.3d 222, 237 (Wyo. 2004) (weighing pretrial incarceration heavily in the defendant's favor where the defendant was not free on bond, and "[the defendant's] extended incarceration necessarily impacted his employment opportunities, financial resources and association"). However, without a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers. *See Maddox*, 2008-NMSC-062, ¶ 32 ("Defendant does bear the burden of production on this issue . . . ."); *see also Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004) ("The burden of showing all types of prejudice lies with the individual claiming the violation and the mere 'possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated.'" (alterations in original) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).

**{36}** The third type of prejudice is the "most serious." *Barker*, 407 U.S. at 532. Again, however, it is necessary for a defendant to substantiate this type of prejudice. For example, *Barker* states that "[i]f witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Id.* If the defendant asserts that the delay caused the unavailability of a witness and impaired the defense, the defendant must "state[ ] with particularity what exculpatory testimony would have been offered," and "[t]he defendant must also present evidence that the delay caused the witness's unavailability." *Jackson*, 390 F.3d at 1265 (first alteration in original) (internal quotation marks and citation omitted); *see also United States v. Richards*, 707 F.2d 995, 998 (8th Cir. 1983) ("In order for the appellee to carry his burden of showing prejudice, he must show that the missing witnesses could have supplied material evidence for the defense."); *Davis*, 474 A.2d at 780 ("To constitute a speedy trial violation claimed prejudice to the defense of a criminal prosecution must relate to a material fact in issue.").

**{37}** Defendant, in the present case, spent two hours in jail and was then released with normal bond restrictions. We acknowledge that the district court found "some actual prejudice in the form of restrictions imposed by pre-trial conditions of release and stress." However, "some [non-particularized] prejudice" is not the type of prejudice against which the speedy trial right protects. Therefore, we hold that Defendant has made no showing of prejudice that is cognizable under the fourth *Barker* factor.

## F. Balancing Test

**{38}** The primary issue raised by the facts of this case is whether a court can find a violation of a defendant's speedy trial right without a particularized showing of prejudice. The United States Supreme Court's opinion in *Doggett* is instructive on this point. *Doggett* held that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. The facts of *Doggett* as they relate to the *Barker* factors are as follows: (1) the length of delay of eight and one-half years was "extraordinary"; (2)

11

the reason for the delay was the government's negligence in prosecuting the defendant; (3) the defendant sufficiently asserted his right and did not acquiesce to the delay; and (4) the defendant failed to make a particularized showing of how he was prejudiced by the delay between his indictment and trial. *Id.* at 657-58. The Court looked to the first three factors to determine whether the defendant's burden to show particularized prejudice could be excused. The Court concluded, "When the Government's negligence . . . causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Id.* (citation and footnotes omitted).

**{39}** Thus, *Doggett* seemed to adopt the position of many lower courts, which generally require that defendants make an affirmative showing of particularized prejudice but excuse that requirement and presume prejudice if the other *Barker* factors weigh heavily in the defendant's favor. *See, e.g.*, *Mendoza*, 530 F.3d at 764 ("[N]o showing of prejudice is required when the delay is great and attributable to the government. Instead, we presume prejudice. Further, [t]he presumption that pretrial delay has prejudiced the accused intensifies over time." (second alteration in original) (internal quotation marks and citations omitted)); *Oriedo*, 498 F.3d at 600 (holding that where the defendant conceded that he suffered no particular prejudice, "in some circumstances, prejudice may be presumed. This presumed prejudice, although insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors is nonetheless part of the mix of relevant facts in the ultimate balancing analysis" (internal quotation marks and citations omitted)); *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir. 1985) ("[T]he settled rule in this circuit is that unless the first three *Barker* factors all weigh heavily against the government, the defendants must demonstrate actual prejudice."); *Hill v. Wainwright*, 617 F.2d 375, 379 n.4 (5th Cir. 1980) ("When the first three factors of the *Barker* balancing test are heavily weighed against the government, the defendant does not have to demonstrate prejudice."). We similarly hold that generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. However, if the length of delay and the reasons for the delay weigh heavily in defendant's favor and defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated.

**{40}** In the present case, Defendant failed to show prejudice, and the other factors do not weigh heavily in Defendant's favor. Because Defendant failed to demonstrate particularized prejudice as a consequence of the ten-month and six-day delay, we cannot conclude that Defendant's right to a speedy trial was violated. Accordingly, we reverse the Court of Appeals.

## III. CHANGE IN CURRENT GUIDELINES

**{41}** We asked the Public Defender's office to file an amicus brief, and permitted the State to respond, addressing the issue of whether we should change the current guidelines—nine months for simple cases, twelve months for cases of intermediate complexity, and fifteen months for complex cases—concerning "presumptively prejudicial" length of delay. In light of our conclusion that Defendant's right was not violated, we recognize that we need not address the guidelines for determining when the length of delay becomes presumptively prejudicial. However, we do so in the interest of providing guidance to the lower courts and to recognize recent changes in the administration of our criminal justice system.

**{42}** We have provided broad guidelines for determining when the length of delay triggers further inquiry into the claim of a violation of the right to speedy trial. *Maddox*, 2008-NMSC-062, ¶ 9. These guidelines provide a standard on which the district courts may predicate a review of the merits of a defendant's claim when the defendant shows that the length of delay has crossed the threshold of reasonable delay. *See Doggett*, 505 U.S. at 651-52.

**{43}** We implemented Rule 5-604(B) NMRA in response to *Barker*. "Rule 5-604(B), commonly referred to as the six-month rule, requires the commencement of trial in a criminal proceeding within six months of the latest of several different triggering events." *Duran v. Eichwald*, __-NMSC-__, ¶ 2, No. 31,372, slip op. at 1 (June 17, 2009). The six-month rule is "designed to assure prompt disposition of criminal cases." *State v. Cardenas*, 2003-NMCA-051, ¶ 12, 133 N.M. 516, 64 P.3d 543 (internal quotation marks and citation omitted). As a case management tool, the six-month rule accounts for the amount of delay considered reasonable in bringing cases to trial. Therefore, the six-month rule helps us identify when the length of delay exceeds "customary promptness" for bringing a case to trial. *Doggett*, 505 U.S. at 652.

**{44}** Over time, the minimum length of delay considered "presumptively prejudicial" and the six-month rule have mirrored each other. This Court first held that a six-month delay is sufficient to trigger the *Barker* balancing test. *State v. Mendoza*, 108 N.M. 446, 450, 774 P.2d 440, 444 (1989) ("Whenever there is a delay of more than six months between the time of arraignment and the date of the trial, four factors are to be considered in determining whether a defendant has been denied the right to a speedy trial."). In *Salandre*, this Court increased that threshold from six to nine months. 111 N.M. at 428. *Salandre* relied on language from *Barker*, stating, "[*Barker*] recognized that, in a jurisdiction with a six-month rule such as New Mexico, a nine-month delay may be unacceptable under certain circumstances." *Salandre*, 111 N.M. at 428; *see Barker*, 407 U.S. at 528. *Salandre* held that nine months was the minimum length of delay considered presumptively prejudicial for simple cases. *Salandre*, 111 N.M. at 428.

**{45}** When *Salandre* was decided, Rule 5-604(B) required that cases be tried within six months but permitted extensions upon application to the Supreme Court. In 1998, we amended Rule 5-604 to permit the district court to grant a three-month extension before requiring parties to apply to this Court for an extension of time. Thus, the 1998 amendment reflected the conclusion in *Salandre* that for simple cases, nine months was the minimum length of delay considered presumptively prejudicial.

**{46}** On August 13, 2007, we amended Rule 5-604 by increasing the amount of time that the trial court may grant as an extension from three to six months before the parties must apply to this Court. That amendment demonstrates the need for greater flexibility in the trial courts to grant extensions due to greater inherent delays involved in the prosecution of criminal cases. With that amendment we no longer require application to this Court in which the party must explain the "extreme circumstances" necessitating an extension until the length of delay exceeds twelve months. In contrast, our speedy trial cases have continued to indicate that a nine-month delay may be presumptively prejudicial, resulting in the anomalous possibility that a defendant's right to a speedy trial may be violated by delay that is otherwise reasonable. The lack of congruence between our speedy trial standard and Rule 5-604 fails the purpose of our guidelines, which is "to provide the courts and the parties with a rudimentary warning of when speedy trial problems may arise." *Salandre*, 111 N.M. at 427-28 (internal quotation marks and citation omitted).

13

**{47}** We hold, therefore, that one year is the appropriate guideline for determining when the length of delay for a simple case may be considered presumptively prejudicial. This is consistent with the majority of other jurisdictions, both federal and state. The federal circuit courts are of a general consensus that delay of approximately one year may be considered presumptively prejudicial. *See, e.g.*, *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006) ("We have stated that a delay is presumed prejudicial when it exceeds one year."); *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003) ("A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors."); *United States v. Santiago-Becerril*, 130 F.3d 11, 21 (1st Cir. 1997) ("The Supreme Court has said that the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year. We shall assume, under the foregoing, that the fifteen[-]month delay in this case was 'presumptively prejudicial' so as to trigger further inquiry." (citations omitted)); *United States v. Walker*, 92 F.3d 714, 717 (8th Cir. 1996) ("The court acknowledged that lower courts had concluded that, depending on the charges, a delay that approaches one year would be 'presumptively prejudicial,' triggering the speedy trial inquiry and appeared to accept that conclusion. The 37-month delay in this case is thus sufficient to trigger the speedy trial analysis." (citations omitted)); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993) ("This circuit generally requires a delay of one year to trigger speedy trial analysis."). State courts are more divided on the appropriate length of delay considered presumptively prejudicial, but the majority of states consider a delay of one year as the benchmark for presumptive prejudice. *See, e.g.*, *State v. Fischer*, 744 N.W. 2d 760, 770 (N.D. 2008) ("A delay of one year or more is 'presumptively prejudicial,' triggering an analysis of the other speedy trial factors."); *State v. Taylor*, 781 N.E. 2d 72, 79 (Ohio 2002) ("The fact that appellant was brought to trial within a year of the murders can hardly allow the delay to be characterized as 'presumptively prejudicial.'"); *State v. Zmayefski*, 836 A.2d 191, 194 (R.I. 2003) ("A delay longer than one year is 'presumptively prejudicial.'"); *State v. Tiegen*, 744 N.W.2d 578, 585 (S.D. 2008) ("Delays of over a year are presumptively prejudicial; delays of less than a year are not."). *But see Murray v. State*, 967 So.2d 1222, 1230 (Miss. 2007) ("This Court has previously stated 'that any delay of *eight (8) months or longer is presumptively prejudicial*.'" (citation omitted)).

**{48}** Consistent with the 2007 amendment to Rule 5-604 and the consensus of our sister states and the federal Circuit Courts of Appeals, we adopt one year as a benchmark for determining when a simple case may become presumptively prejudicial. Accordingly, we also shift the guidelines for cases of greater complexity: Fifteen months may be presumptively prejudicial for intermediate cases and eighteen months may be presumptively prejudicial for complex cases.

**{49}** We emphasize that these guidelines should not be construed as bright-line tests. Rather, they are meant to guide the district courts' determination of "presumptively prejudicial" delay. The situation may arise where a defendant alerts the district court to the possibility of prejudice to his defense and the need for increased speed in bringing the case to trial, i.e., the impending death of a key witness. Where that possibility is realized and the defendant suffers actual prejudice as a result of delay, these guidelines will not preclude the defendant from bringing a motion for a speedy trial violation though the delay may be less than one year. However, it will then be up to the district court to decide whether the delay was sufficient to require further inquiry into the speedy trial analysis.

**{50}** This shift in the applicable guidelines is predicated on the 2007 amendment to Rule 5-604, which became effective on August 13, 2007. This shift, therefore, was not foreshadowed prior to that date, and the district courts were not on notice that the old

14

guidelines did not accurately represent the amount of delay that should trigger a speedy trial inquiry. Because these time thresholds are merely guidance to the district courts, where the courts have relied on the old guidelines prior to August 13, 2007, we will not apply the new guidelines to our review on appeal. Therefore, these guidelines apply only to speedy trial motions to dismiss initiated on or after August 13, 2007. Though it would make no difference in the ultimate result, we have not applied the new guidelines in the present case, because the district court heard and ruled on Defendant's motion to dismiss on April 27, 2007.

## IV.  CONCLUSION

**{51}**     For the above stated reasons, we reverse the judgment of the Court of Appeals and affirm Defendant's conviction and sentence.

**{52}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for _State v. Garza_, No. 30,715**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-ST | Speedy Trial |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PJ | Prejudice |
| CA-RD | Right to Speedy Trial |
| CA-TL | Time Limitations |