This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39265**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RACHEL ROMERO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio J. Chavez, District Judge**

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}**    Defendant Rachel Romero was convicted following a jury trial of trafficking a controlled substance (methamphetamine) (possession with intent to distribute), NMSA 1978, § 30-31-20(A)(3)(a) (2006); possession of a controlled substance (heroin), NMSA 1978, § 30-31-23(A), (E) (2011, amended 2021); and possession of drug paraphernalia, NMSA 1978, § 30-31-25.1(A) (2001, amended 2022). Defendant appeals contending (1) the district court abused its discretion when it denied her request for substitute court-appointed counsel; and (2) the district court erred in concluding that there was no

violation of Defendant's right to a speedy trial. We are not persuaded that the district court erred; we therefore affirm.

**BACKGROUND**

**{2}**     On September 28, 2017, Defendant was indicted for trafficking heroin and methamphetamine with intent to distribute and possession of drug paraphernalia, based on an incident that occurred on June 4, 2017. The district court appointed Ray Floersheim, a public defender, to represent Defendant.

**{3}**     Due to various delays in the proceedings, which we review in our discussion of Defendant's speedy trial claim, this case did not go to trial until December 10, 2019. On December 3, 2019, a week before the scheduled trial date, a pretrial hearing was held in the district court. At the outset of the hearing, counsel for both parties informed the district court that the State had an outstanding plea offer, which would expire that day if not accepted, and was waiting for a response from Defendant. Defense counsel told the district court that he viewed the plea offer as highly favorable to his client. If Defendant accepted the plea, she would serve no prison time whereas she faced up to eighteen years in prison if convicted on all charges.

**{4}**     The district court spoke directly to Defendant, informing her that it was her decision whether to accept the plea offer or go to trial, she had a right to go to trial, and if she chose to go to trial and was convicted, she would not be penalized for refusing the plea deal. Defendant chose to go to trial. Defendant then continued to address the court, stating that she "wanted to see . . . if [she] could get another counselor, another attorney." Defendant then stated, "I just feel like Mr. Floersheim is not going to fight in my favor."

**{5}**     The district court attempted to assuage Defendant's worries about defense counsel's willingness to fight for her at trial, telling Defendant that Mr. Floersheim was a seasoned trial attorney who would still fight for her at trial even though he had advised her to take the plea offer. The district court then told Defendant that it was not inclined to grant a request to assign new counsel with trial only a week away, noting that there was no time for another attorney to prepare for trial. The court stated it would consider a motion from defense counsel to withdraw only if there was "some actual impasse where you guys just can't work together."

**{6}**     Continuing to speak directly to Defendant, the district court stated, "So Ms. Romero, here's what we are going to do. Call Mr. Floersheim, talk to him. He is saying he is available in his office. As you heard, I called and his assistant got him on the phone pretty quickly. And we'll plan on being here Tuesday morning." Defense counsel then asked the court to remind Defendant to call him, and asked for her phone number so he could return her call if necessary. Defense counsel also restated the district court's offer to consider granting a motion to withdraw if counsel and Defendant reached an impasse in the telephone call. Finally, counsel stated his understanding that any

delay in the scheduled trial created by Defendant's request to substitute counsel would be attributed to Defendant for speedy trial purposes.

**{7}** On December 5, 2019, two days later, the district court held a status conference to receive a report from defense counsel on his telephone discussion with Defendant, and to determine whether grounds existed requiring substitute counsel. Defendant was not present, apparently because the hearing was set on short notice. Defense counsel informed the court that Defendant had failed to call him despite the court's direction that she do so. Defense counsel stated that because Defendant did not contact him, he did not know the nature of Defendant's concerns about his representation apart from her disagreement with his advice to accept the State's plea offer. Defense counsel proposed that the best course under the circumstances was that he should file a motion to withdraw because he worried that problems with his client could arise during trial.

**{8}** The court found that "part of the underlying issue appears to be a difficult client that may want to go in directions that aren't either legally permissible or have expectations that are not realistic." The court then stated its view that the case was then more than two years old, it was ready to go to trial, Defendant had already filed a motion to dismiss on speedy trial grounds, and that motion had been denied. The court found that Defendant's request was creating delay and refused to appoint substitute counsel.

**{9}** Defendant did not renew her request between December 5, 2019, and the start of trial five days later, on December 10, 2019, nor does our review of the record show that she raised any concerns about counsel's representation either at the outset or during trial.

## DISCUSSION

**{10}** Defendant contends that the district court abused its discretion by denying her motion for the appointment of substitute counsel without conducting an in-depth inquiry into her reasons for wanting new counsel.

### I. The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for Substitution of Court-Appointed Counsel

**{11}** We review a district court's denial of a request for substitution of counsel for abuse of discretion. *See State v. Salazar*, 1970-NMCA-056, ¶ 13, 81 N.M. 512, 469 P.2d 157 ("[W]hether the dissatisfaction of an indigent accused with his court-appointed counsel warrants discharge of that counsel and appointment of new counsel is for the trial court, in its discretion, to decide." (internal quotation marks and citations omitted)). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{12}** Although an indigent defendant has the right to appointed counsel, an indigent defendant is not entitled to their choice of counsel. *State v. Lucero*, 1986-NMCA-085, ¶ 21, 104 N.M. 587, 725 P.2d 266. "Dissatisfaction with trial counsel's tactics or strategy is not sufficient grounds for replacement of counsel." *State v. Stallings*, 2020-NMSC-019, ¶ 37, 476 P.3d 905 (internal quotation marks and citation omitted). A showing of good cause is required: "Without a showing of good cause, [a] defendant may not insist upon substitution of court-appointed counsel." *State v. Lewis*, 1986-NMCA-090, ¶ 17, 104 N.M. 677, 726 P.2d 354. We have held that good cause sufficient to warrant substitution of counsel includes a "'conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *State v. Castillo*, 1990-NMCA-043, ¶ 6, 110 N.M. 54, 791 P.2d 808 (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2nd Cir. 1981)).

**{13}** Defendant claims that the district court abused its discretion in refusing to substitute counsel because the court failed to engage in an adequate inquiry into Defendant's reasons for seeking substitute counsel. We understand Defendant to argue that such an inquiry might have revealed a complete breakdown of communication or an irreconcilable conflict not otherwise apparent to the district court.

**{14}** "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *Id.* (alteration, internal quotation marks, and citation omitted). We do not agree with Defendant that the district court failed to engage in an inquiry sufficient to meet this standard.

**{15}** The record shows that the district court addressed Defendant directly when she asked for substitute counsel following her decision to reject the State's plea offer and go to trial. The district court explained to Defendant that given the late date, just a week before trial, the court would not substitute counsel for any reason other than a total breakdown in communication or an irreconcilable conflict between Defendant and her counsel that was so pervasive it would prevent her from receiving a fair trial.[1]

**{16}** The district court then told Defendant that it would determine whether there was a breakdown in communication or a conflict with counsel serious enough to preclude an adequate defense by directing Defendant to telephone counsel that afternoon to see if any conflict could be resolved. The court set a status conference two days later to allow defense counsel to inform the court about any irreconcilable conflict or total breakdown in communication that manifested itself in that telephone call. Defendant never made that call. Under these circumstances, we do not agree that the district court abused its discretion by proceeding to deny substitution of counsel based on the information available to it.

---

1This Court has held that it is not an abuse of discretion to refuse to appoint substitute counsel based on a defendant's dissatisfaction with his or her counsel's advice to plead guilty. *See Salazar*, 1970-NMCA-056, ¶¶ 12-15 (concluding that the district court did not abuse its discretion in denying substitution of counsel on this basis).

**{17}** The district court's findings that Defendant's concerns about counsel arose from unrealistic expectations concerning the outcome of the case or a desire to improperly delay the trial, or both, are supported by the evidence in the record: Defendant refused a highly favorable plea agreement; Defendant had previously represented to the court that she would accept a plea agreement, only to withdraw her agreement after the scheduled trial date; Defendant had required another trial date to be rescheduled by filing a motion to dismiss based on denial of a speedy trial days before the trial date; Defendant delayed her request to substitute counsel until a week before trial; and Defendant failed to follow the court's directive to telephone her counsel to attempt to resolve her concerns. These are reasonable grounds, consistent with New Mexico law, to deny the motion to substitute counsel.

**{18}** Finding no abuse of discretion, we affirm the district court's denial of Defendant's motion for substitute counsel.

## II.    Defendant's Speedy Trial Rights Were Not Violated

**{19}** Defendant next contends the district court improperly denied her motion to dismiss for violation of her speedy trial rights.[2] Seeing no error in this refusal to dismiss, we affirm.

**{20}** We review the district court's denial of a defendant's motion to dismiss on speedy trial grounds applying the four-factor balancing test adopted by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). Under that test, courts balance "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "[W]e give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Spearman*, 2012-NMSC-023, ¶ 19 (alterations, internal quotation marks, and citation omitted).

**{21}** The first step in our analysis is to determine whether the length of pretrial delay is "presumptively prejudicial." *State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387. When the length of delay is "presumptively prejudicial," we must proceed to consider and weigh all of the *Barker* factors. *Id.* ¶ 21.

**{22}** A delay is presumptively prejudicial if it extends beyond one year for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *Garza*, 2009-NMSC-038, ¶ 48. The district court made no finding as to the level of complexity; instead, the district court found that a delay of twenty-six months is presumptively prejudicial, even if this case is considered a complex case. We agree with the district court that a delay of twenty-six months is presumptively prejudicial

---

[2]"The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272.

regardless of the complexity of the case. We, therefore, proceed to analyze and weigh the *Barker* factors.

## A.     Length of Delay

**{23}**     We consider the length of the delay again, this time as the first of the four *Barker* factors. *See Doggett v. United States*, 505 U.S. 647, 652 (1992) (noting that, once a defendant establishes a delay is presumptively prejudicial, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim").

**{24}**     Defendant claims that this is a simple case; the State claims that it is of moderate complexity. Our precedent suggests that a delay exceeding twice the length of the presumptive period should be weighed heavily against the State. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 65, 327 P.3d 1129. Whether we agree with Defendant or the State, the delay was more than two times the threshold for a simple or a moderately complex case. We accordingly weigh the delay heavily against the State.

## B.     Reasons for Delay

**{25}**     "Closely related to length of delay is the reason the government assigns to justify the delay," with "different weights [being] assigned to different reasons for the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citations omitted). There are three types of delay that are attributable to the State: (1) deliberate attempts to delay the trial to thwart the defense (which weighs heavily against the State), (2) negligent or administrative delay (which weighs against the State, but not heavily), and (3) delay justified by a valid reason (which is treated neutrally). *Serros*, 2016-NMSC-008, ¶ 29. Delay caused by the court's heavy docket is counted as administrative delay, and weighs against the state, but not as heavily as delay caused deliberately or negligently by the prosecution. *Id.* ¶ 29; *see State v. Tortolito*, 1997-NMCA-128, ¶ 9, 124 N.M. 368, 950 P.2d 811 (holding that the trial court's backlog and docketing problems should be weighed against the state). "As the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate." *Serros*, 2016-NMSC-008, ¶ 29. "Finally, any delay caused by the defendant generally weighs against the defendant." *State v. Deans*, 2019-NMCA-015, ¶ 10, 435 P.3d 1280.

**{26}**     In this case, there were six trial settings that were vacated. Each time a trial date was vacated, the court's busy docket meant that several months were required to reschedule. The district court, with virtually no explanation or findings of fact, found that "[m]uch of the delay is attributable to [D]efendant." The district court specifically mentions only Defendant's "notice of intent to plea[d]" in support of this conclusion. We do not agree that the twenty-six months of delay is predominantly attributable to Defendant.

**{27}**     The record shows that the delay attributable to Defendant's notice of intent to plead, followed by her change of heart, amounted to two of the twenty-six months of

delay. The other time period attributable to Defendant is a two-month delay in the second trial setting from August 7, 2018, until October 15, 2018, due to defense counsel's conflicting trial setting in another court. Finally, the State argues the four-month delay following the late filing of Defendant's motion to dismiss for a speedy trial should be attributed to Defendant. Even if we were to agree with the State that this time is attributable to Defendant, the total time then attributable to Defendant is no more than eight months.

**{28}** Defendant contends that the majority of the delay was due to the State. She specifically points to the State's failure to produce its witnesses repeatedly on the dates scheduled for trial by the district court. The State concedes on appeal that the absence of Patrolwoman Cruzita Romero, the arresting officer, in March 2018, led to a delay attributable to the State of five months, until August 7, 2018. The State also concedes that the State's case agent, Officer William Negrete, was unavailable due to ongoing cancer treatment, leading to almost four months more delay. Finally, the fifth trial setting on May 7, 2019, was continued by the State due to the unavailability of the State's laboratory analyst, leading to a four-month delay.

**{29}** The State claims that we should treat these delays neutrally and not attribute them to the State. The State is correct that where a witness is "missing," the time period of any delay is treated neutrally for speedy trial purposes. *See Barker*, 407 U.S. at 531. We are not convinced, however, that these witnesses were "missing." The State simply asked for a continuance based on Patrolwoman Romero's attending training, and Officer Negrete's illness, without explaining why it could not have made arrangements to have at least one of these officers available for trial. Ultimately, only Patrolwoman Romero testified. Under these circumstances, we treat these time periods as administrative or negligent delay, reserving the designation of delay as neutral for "missing" witnesses whose absence is truly outside the control of the State.

**{30}** The remaining three months of the delay were attributed to a turnover in judge or to a time when the case proceeded normally.

**{31}** Because over twelve months of the twenty-six months of delay is attributable to administrative or negligent delay, we conclude that this factor weighs against the State, but not heavily. *See State v. Montoya*, 2015-NMCA-056, ¶ 16, 348 P.3d 1057 ("Negligent or administrative delay weighs against the state, though not heavily.").

## C. Assertions of the Right

**{32}** In evaluating the third *Barker* factor, we look to the "frequency and force" of Defendant's objections to the delay. *See Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). Even a single assertion by a defendant of the right to a speedy trial is sufficient for this factor to weigh at least somewhat in the defendant's favor. *See id.* However, to determine how heavily this factor should weigh, we assess the timing of a defendant's assertions of the right to a speedy trial, the manner in which the defendant asserted the right, and the actions taken by the

defendant with regard to the delay. *See id.* We afford "relatively little weight" to pro forma assertions. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061.

**{33}** In this case, the record shows that Defendant asserted her speedy trial right two times. Defendant filed a pro forma written speedy trial demand on March 2, 2018. After filing that demand, however, Defendant moved to continue the trial setting scheduled for August 7, 2018, due to defense counsel's scheduling conflict. Defendant did not again assert her right to a speedy trial until July 16, 2019. Defendant's motion was filed so late that two days later, Defendant was forced to move to continue the trial setting scheduled for July 22, 2019, to allow time for the motion to be heard.

**{34}** We, therefore, weigh Defendant's assertion of her speedy trial right only slightly in her favor.

### D. Prejudice

**{35}** We turn next to the last *Barker* factor, prejudice to Defendant caused by the delay. Generally, the defendant has the burden to show "particularized prejudice." *Serros*, 2016-NMSC-008, ¶ 86 (internal quotation marks and citation omitted). However, "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Id.* (internal quotation marks and citation omitted); *see also State v. Ochoa*, 2017-NMSC-031, ¶ 55, 406 P.3d 505 (noting that prejudice can be presumed without affirmative proof in some circumstances). We have not found that the reasons for the delay, the second factor, weigh heavily in Defendant's favor. We, therefore, must consider whether Defendant has established "particularized prejudice."

**{36}** Defendant did not testify at the hearing on her speedy trial motion, nor did she present any other evidence at that hearing. The district court found that Defendant had been out on conditions of release since the inception of this case. Defense counsel argued anxiety regarding the outcome of her case. Defendant also suggested in one of her pleadings that she had suffered loss of employment opportunities due to the pendency of these proceedings.

**{37}** To support a claim of prejudice based on anxiety or stress, a defendant must specifically show that their anxiety, concern, and disruption of life is greater than or different from the general anxiety and concern that would likely befall any individual awaiting trial on criminal charges. *See State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 48, 488 P.3d 715. Defendant made no such showing. Similarly, specific evidence of lost employment and lack of employment opportunity can be sufficient to show the kind of particularized and undue prejudice that satisfies this fourth factor of the *Barker* analysis. *See Spearman*, 2012-NMSC-023, ¶ 38. Defendant, however, did not introduce any evidence of job opportunities she had lost or been denied. The district court therefore

properly found that there was no evidence of prejudice. We, therefore, agree with the district court and weigh factor four in favor of the State.

## E.  Balancing the Barker Factors

**{38}**  We weigh the *Barker* factors as follows: factor one weighs heavily against the State, factor two weighs slightly against the State, factor three weighs only slightly in Defendant's favor, and factor four weighs in favor of the State. These factors, considered together, are not sufficient to establish that Defendant's right to a speedy trial was violated. As noted in our discussion, where a Defendant fails to establish particularized prejudice, as is the case here, the speedy trial factors will support dismissal only where the first two factors weigh heavily against the state and the defendant has not contributed to the delay. Here, only the first factor weighs heavily against the State under our speedy trial analysis, and Defendant contributed to the delay; we, therefore, affirm the district court.

## CONCLUSION

**{39}**  For the reasons stated above, we affirm Defendant's convictions.

**{40}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**