This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                          **No. 33,199**

**ELIZABETH DAISY KUPFER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed S. Sheppard, District Judge**

Joseph E. CampBell, Special Prosecutor
Edgewood, NM

for Appellant

Law Office of Erlinda Ocampo Johnson, L.L.C.
Erlinda O. Johnson
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1} On August 19, 2009, Defendant Elizabeth Daisy Kupfer was indicted on fifty counts of fraud, embezzlement, money laundering, tax evasion, making or permitting false public vouchers, conspiracy, and other criminal offenses relating to her alleged involvement in the disbursement of federally granted election funds by the Office of then Secretary of State, Rebecca Vigil-Giron. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 1, 327 P.3d 1129, *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188 (affirming the district court's dismissal on speedy trial grounds). Ms. Vigil-Giron was a co-defendant in this matter. On July 31, 2013, following a two-day hearing on Defendant's motion to dismiss for a violation of speedy trial rights, the district court dismissed the case on the basis of a speedy trial violation. We conclude that the district court properly ruled that Defendant's constitutional right to a speedy trial was violated, and we affirm the district court's order of dismissal.

**BACKGROUND**

{2} We do not provide a detailed background section here because this is a memorandum opinion, the parties are familiar with the facts, and from the August 19, 2009, indictments of Defendant and others, including Ms. Vigil-Giron, up to May 18, 2012, when the defendants' cases were severed, the procedural time-line of this case substantially mirrors that which is set out in *Vigil-Giron. See* 2014-NMCA-069, ¶¶ 1-

5. For clarity, the historical facts and proceedings will be discussed in the body of this Opinion as necessary.

{3} The State raises three issues in support of its requested reversal of the district court's order dismissing this case on speedy trial grounds. First, the State argues that the court erred in concluding that Defendant suffered prejudice, in the form of health problems, as a result of the delay in this case. Second, the State argues that the district court erred in concluding that Defendant was prejudiced by Hoyt Clifton's death. Third, and finally, the State argues that the district court's attribution to the State of twenty-eight months of the delay in bringing this case to trial was erroneous.

{4} We conclude that the district court's findings regarding the prejudice Defendant suffered as a result of the delay in bringing the present case to trial, including the death of prospective witness, Mr. Clifton, were supported by substantial evidence. We further conclude that the State's argument regarding the attribution of fault for the delay provides no basis for reversal. We affirm.

**DISCUSSION**

**Standard of Review**

{5} Under the Sixth Amendment to the United States Constitution, a person accused of a crime has a fundamental right to a speedy trial. *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. At the heart of this right is "preventing prejudice

3

to the accused." *Id.* ¶ 12. In effect, the right is intended "to prevent oppressive pretrial incarceration[,] . . . to minimize anxiety [accompanying public accusation,] and . . . to limit the possibility that the defense will be impaired." *State v. Spearman*, 2012-NMSC-023, ¶ 34, 283 P.3d 272 (internal quotation marks and citation omitted); *Garza*, 2009-NMSC-038, ¶ 12.

**{6}** Determining whether a defendant's speedy trial right has been violated requires a review of the particular circumstances of each case including consideration of the conduct of the prosecution, that of the defendant, and "the harm to the defendant from the delay." *Garza*, 2009-NMSC-038, ¶ 13. Our analysis in this regard is guided by considering four factors: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of [her] right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated." *Id.* (internal quotation marks and citation omitted)). On appeal from an order of dismissal for a violation of a defendant's right to a speedy trial, "we give deference to the district court's factual findings," provided that they are supported by substantial evidence, but we review the speedy trial factors de novo. *Spearman*, 2012-NMSC-023, ¶ 19 (alteration, internal quotation marks, and citation omitted); *State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135 (recognizing that this Court's deference to the district court's findings of fact in a speedy trial context is

4

predicated upon the condition that those findings are supported by substantial evidence).

**Length of the Delay and the Assertion of the Right**

{7}     Of the four speedy trial factors, the first factor, length of delay, and the third factor, Defendant's assertion of her right to a speedy trial, are not at issue in this appeal.  The district court found that the delay in this case exceeded the eighteen-month presumptively prejudicial threshold for a complex case by an additional twenty-six months. *See Garza*, 2009-NMSC-038, ¶ 2 (stating that the length of delay necessary to trigger the speedy trial inquiry is eighteen months for complex cases). The district court weighed the length-of-delay factor "heavily against the State[.]" Additionally, owing to what the district court characterized as Defendant's "mostly pro forma" assertions of her right to a speedy trial, it weighed the assertion-of-right factor "lightly against the State."  Because the State has not attacked the district court's findings in regard to the first and third factors, they are conclusive. *See* Rule 12-213(A)(4) NMRA (stating that a finding that is not attacked by the appellant shall be deemed conclusive).  Further, because the State does not claim that the court erred in weighing the first and third factors, the propriety of the court's conclusion in that regard presents no issue for review.

**Prejudice**

{8} The district court found that Defendant suffered two forms of prejudice as a result of the delay in this case, namely, undue anxiety and stress and an impaired defense. Protection from these forms of prejudice are at the crux of an accused's right to a speedy trial. *See Spearman*, 2012-NMSC-023, ¶ 34 (stating that the speedy trial right is intended to "minimize anxiety . . . of the accused" and to "limit the possibility that the defense will be impaired" (internal quotation marks and citation omitted)). The State argues that the court's findings related to prejudice were not supported by substantial evidence. We address each of the State's arguments in turn.

{9} As an initial matter, we refer the State to *Vigil-Giron* in which this Court analyzed and rejected the State's assertion that any prejudice alleged to have occurred prior to the presumptive-prejudice triggering date should not be considered in evaluating a claimed deprivation of the right to a speedy trial. 2014-NMCA-069, ¶¶ 42-50. Despite having filed its brief in chief in this case on June 16, 2014, two months after this Court issued *Vigil-Giron*, and despite having filed its reply brief on September 16, 2014, three months after our Supreme Court denied certiorari in *Vigil-Giron*, the State persists in its contention that any prejudice suffered by Defendant prior to the presumptive-prejudice triggering date of February 19, 2011, should not be considered in evaluating prejudice. *See* 2014-NMCA-069, *cert. denied*, 2014-NMCERT-006. Further, in contravention of our Rules of Appellate Procedure, the

State's argument in this regard is presented without citation to our discussion of that issue in *Vigil-Giron*. *See* Rule 12-213(A)(4) (stating that "[a]pplicable New Mexico decisions shall be cited" for each issue raised in an appellant's briefing). Having already considered and rejected the State's notion that prejudice suffered prior to the presumptive-prejudice triggering date does not factor into a speedy trial analysis, we will not address it for a second time. *See Vigil-Giron*, 2014-NMCA-069, ¶ 48 ("[O]nce the date of presumptive prejudice has passed, we may consider indicia of prejudice spanning from the date that the charges were filed through the date of the case's resolution."). We turn now to the State's remaining contentions of error in regard to the district court's evaluation of the prejudice suffered by Defendant.

{10} The State argues that the district court erred in attributing Defendant's stress and anxiety to the indictment in this case when, in the State's view, Defendant's stress and anxiety were caused by a federal indictment that was issued in December 2010. To place the State's argument in context, we provide the following facts derived from the district court's undisputed findings.

{11} In December 2010, at which point the present case had been pending for approximately sixteen months, Defendant was charged with federal tax evasion. She was convicted of those charges in August 2012. Defendant was facing more possible prison time as a result of the charges in the present case than she was facing as a result

7

of her federal conviction. In support of Defendant's claim that she suffered undue prejudice as a result of the delay in bringing the present case to trial, Defendant submitted medical records, a letter from her physician, and she testified on her own behalf at the speedy trial hearing. Additionally, evidence relevant to the issue of prejudice was presented by Defendant's physician, Dr. Henry Anthony Garcia, whom the State called as a witness in the speedy trial hearing.

{12} The State focuses its argument regarding the cause of Defendant's stress and anxiety on two of the district court's findings. First the State points to the court's finding that "the federal charges may have exacerbated Defendant's on-going anxiety, but the state charges were filed first and the testimony indicated [that] Defendant had already begun to experience increased anxiety in the form of health problems and loss of employment when the federal indictment was filed." Second, the State points to the court's finding that

> it is impossible to precisely parse out the prejudice resulting from the federal indictment from prejudice which was a result of the delay in bring[ing] her state case to trial. This somewhat diminishes the resulting prejudice, but the [c]ourt disagrees that [*State v.*] *Maddox*[, 2008-NMSC-062, ¶ 35, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038,] stands for the proposition [that] the answer is to simply disregard any prejudice occurring after the federal charges were filed.

{13} In an attempt to challenge the factual aspects of the foregoing findings, the State argues that there is substantial evidence to indicate that the prejudice Defendant

8

suffered was caused by the filing of the federal charges and her subsequent federal conviction. In support of that contention, the State provides a selection of facts from the speedy trial hearing that, when viewed in a light most favorable to the State's position, tend to support its assertion. The manner in which the State presents its argument contravenes our standard of review.

**{14}** In reviewing speedy trial issues, the appellate courts defer to the district court's findings of fact provided they are supported by substantial evidence. *Spearman*, 2012-NMSC-023, ¶ 19; *O'Neal*, 2009-NMCA-020, ¶ 16. We do not re-weigh the evidence or substitute our judgment for that of the district court; rather, we ask whether the evidence is such that "a reasonable mind would find [it] adequate to support a conclusion." *Dydek v. Dydek*, 2012-NMCA-088, ¶ 32, 288 P.3d 872 (stating the standard by which the appellate courts conduct substantial evidence review). We do not consider whether "substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Id.* (internal quotation marks and citation omitted).

**{15}** Having reviewed the evidence that the district court relied upon to make the at-issue findings, we conclude that the findings were supported by substantial evidence. At the outset, we observe that the State does not challenge the substantiality of the evidence underlying the district court's finding that Defendant experienced increased

9

anxiety in the form of loss of employment prior to the federal indictment, therefore, we do not review the sufficiency of the evidence underlying the district court's conclusion in that regard. As to whether Defendant's "increased anxiety in the form of health problems" began prior to the federal indictment, we particularly note the following. Defendant testified that since August 2009 when she was indicted in the present case, she began experiencing anxiety attacks, "a lot more asthma problems[,]" difficulty with her allergies, dizziness, headaches, a vitiligo[1] problem that worsened over time, insomnia, fatigue, exhaustion, and depression. Dr. Garcia testified, in relevant part, that as of January and February 2010, Defendant was experiencing new illnesses such as hypertension, depression, fatigue, and vitiligo and that, in his opinion, Defendant's "legal problems" had a negative impact on her health. Dr. Garcia explained that generally "stress does not cause anything, but it aggravates everything[,]" including the conditions with which Defendant was diagnosed. The district court found the foregoing testimony of Defendant and Dr. Garcia credible, and we will not second-guess that determination. *State v. Anaya*, 2012-NMCA-094, ¶ 30, 287 P.3d 956 (stating that when the district court, in its role as fact-finder makes a

---

[1] According to Dr. Garcia, vitiligo is "a [depigmentation] of the skin, usually brought on by antibodies that attack the melanocytes that produce the melanite"; the condition may be aggravated by stress. Defendant experienced vitiligo as small spots that appeared on her skin in 2009 and continued to get bigger.

credibility determination, this Court will not second-guess it). Dr. Garcia's and Defendant's testimony concerning Defendant's new and/or aggravated health problems that began in August 2009, when Defendant was indicted in the present case, and that were observed by Dr. Garcia in January and February 2010, adequately support the district court's conclusion that those issues pre-dated the December 2010 federal indictment. We reject the State's argument to the contrary.

{16} The State also argues that the district court erred in attributing Defendant's undue anxiety and stress to the delay in this case because, in the State's view, *Maddox*, 2008-NMSC-062, stands for the proposition that the federal case "attenuate[d] the prejudice of the State case[.]" The State's reliance on *Maddox* is not helpful in the context of this case. In *Maddox*, our Supreme Court rejected the defendant's argument that "had the [prosecution] timely brought him to trial, he would have had an opportunity to serve his sentences[,]" for a Florida crime and a separate New Mexico crime, "concurrently." *Id.* ¶ 35 (internal quotation marks and citation omitted). The *Maddox* defendant failed to produce any evidence supporting the notion that he could have somehow prevailed upon the discretion of a New Mexico sentencing court to permit him to serve his New Mexico sentence concurrently with the sentence that he served in Florida. *Id.* ¶¶ 34-35. His assertion that he was prejudiced by having lost the opportunity to serve concurrent sentences for the two

11

crimes was, therefore, "too speculative" and did not establish undue prejudice for the purpose of a speedy trial analysis. *Id.*

{17}     In contrast to the *Maddox* defendant's speculative assertion of prejudice, Defendant supported her assertion of prejudice as a result of the delay in the present case with credible testimony, as discussed earlier. *See Spearman*, 2012-NMSC-023, ¶ 39 (indicating that, in claiming prejudice as a result of a speedy trial violation, the defendant must provide "actual evidence" of prejudice, for example, in the form of testimony). *Maddox* is further inapplicable to the present case because Defendant did not claim, and the district court did not find, prejudice as a result of a hypothetical lost opportunity to serve concurrent sentences arising from Defendant's federal conviction and a potential state conviction.   Rather, as discussed earlier, the district court concluded, based on substantial evidence, that the delay in this case caused Defendant undue stress and anxiety in the form of new and worsened health problems, among other things.   In sum, under the circumstances here, we are not persuaded by the State's reliance on *Maddox*.

{18}     Further, we observe that the attenuating effect of the federal charges on the prejudice caused by the delay in the present case was not overlooked by the district court.  We note, for example, that the district court concluded only that "some [or] part of [the] prejudice [suffered by Defendant] is attributable to the delay in resolving

12

the state case[,]" rendering Defendant's showing of prejudice in this regard not "particularly strong," but nevertheless Defendant proved that "some actual prejudice" resulted from the delay in bringing the present case to trial. By taking the federal charges into account as a factor that, in the district court's words, "may have exacerbated Defendant's on-going anxiety" and weakened Defendant's showing of prejudice, the district court appears to have fairly balanced the two considerations. We see no reason to reconsider the court's determination in that regard. *See Dydek*, 2012-NMCA-088, ¶ 32 (stating that the appellate courts will not re-weigh the evidence or substitute judgment for that of the fact-finder).

{19} We now turn to the State's argument that insufficient evidence was presented to support the district court's determination that Defendant's defense was prejudiced as a result of Mr. Clifton's death in August 2012. Mr. Clifton's role in the circumstances underlying the charges in this case was discussed in *Vigil-Giron. See* 2014-NMCA-069, ¶¶ 57, 61-62. The death of a witness during a delay in bringing a case to trial is the "most serious" form of prejudice to the defense. *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted).

{20} The district court found that Defendant made a "sufficient showing" that Mr. Clifton could have supplied testimony that would have been helpful to her defense.

13

In support of that finding, the district court relied on Defendant's testimony at the speedy trial hearing that, in the court's words, included the following:

> Defendant testified [that Mr.] Clifton was not only involved in the formation of the [at-issue] contract . . ., but that he later helped in the . . . administration of the contract. Defendant asserts that [Mr.] Clifton would have been able to testify that she had no involvement in the awarding of funds under the [at-issue] contract.

The district court also noted that "[Ms.] Vigil-Giron testified, under oath at the [hearing on the] motion to dismiss in her case, [that Mr.] Clifton was involved in the administration of the contract and deciding how the [at-issue] funds would be used." Further, the district court found that although the State's

> case against Defendant may not focus on the formation of the contract, in the State's own words: '. . . the contract, and . . . [D]efendant's actions regarding it, serves as a background for the conspiracy and the acts taken in furtherance of the conspiracy.' It is the State's theory [that] each co-defendant acted in concert, each having an essential role; the contract and the meaning of its terms (and subsequent amendments and ancillary agreements) are therefore at issue[] in this case. According to the State, the [at-issue] contract was a 'delivery vehicle for the money.' Defendant should have the right to cross-examine any witness who can speak to the 'background' the State partly relies upon to establish the conspiracy of which she is allegedly part.

(First omission in original.) (Citations omitted.)

{21} On appeal, the State points to a pretrial interview during which Mr. Clifton stated that, after the at-issue contract was awarded, he had no involvement in its administration. Mr. Clifton's pretrial interview statement ostensibly conflicts with the

14

testimony of Ms. Vigil-Giron and Defendant, who both testified that Mr. Clifton was involved with the administration of the at-issue contract, and upon which testimony the district court partly relied in this case and in *Vigil-Giron* to determine that Mr. Clifton's testimony would have been exculpatory. *See* 2014-NMCA-069, ¶ 63. When presented with this discrepancy, the district court here found that the administration of the contract was not "the apparent focus of the questioning" during Mr. Clifton's pretrial interview, and therefore, there was no way to know what Mr. Clifton "would have testified to had the issue of the administration of the contract been fully explored, in-person, subject to cross-examination, and under oath." "Further," the district court found, "even if [Mr.] Clifton had maintained [that] he had no direct role in the contract's administration at trial, any discrepancy between Defendant's testimony and [Mr.] Clifton's testimony would have been [a question of credibility] for a jury to sort out." While the State attacks the district court's reasoning on the ground that it is "purely speculative[,]" the State's argument does not persuade us that the court erred in concluding that Defendant's defense was impaired by Mr. Clifton's death.

{22}     Even were we to assume that Mr. Clifton was not involved in the administration of the at-issue contract, that fact alone was not the sole ground upon which the district court concluded that the absence of Mr. Clifton's testimony impaired Defendant's defense. As discussed earlier, in addition to its finding regarding Mr. Clifton's

15

involvement in administering the at-issue contract, the district court also found that Mr. Clifton's testimony would have aided Defendant's defense by showing that Defendant was not involved in the administration of funds and by providing background information regarding the contract, Defendant's actions in regard to the contract, and the "conspiracy" in which Defendant was allegedly involved. These findings, not attacked by the State, are conclusive and adequately support the district court's ruling that Defendant's defense was impaired by Mr. Clifton's death. *See* Rule 12-213(A)(4) (stating that a finding that is not attacked on appeal shall be deemed conclusive); *Dydek*, 2012-NMCA-088, ¶ 32 (stating that substantial evidence is that which "a reasonable mind would find adequate to support a conclusion" (internal quotation marks and citation omitted)).

{23}     In sum, we conclude that the district court's findings related to the undue prejudice suffered by Defendant as a result of the delay in bringing this case to trial were supported by substantial evidence. In accord with its findings, the district court weighed the prejudice factor against the State. We conclude that under the circumstances of this case, the district court's decision to weigh the prejudice factor against the State was appropriate and shall not be reversed.

**Reason for the Delay**

16

{24} Of the total forty-four-month delay in this case, the district court concluded that more than twenty-eight months were attributable to the State, four months were attributable to Defendant, and the remaining twelve months were neutral and did not weigh against either party. At issue in this appeal is solely the time frame from October 19, 2009, at which time the case was assigned to Judge Murdoch, through July 27, 2011, when the special prosecutor, Joseph CampBell, was appointed; a detailed procedural history of these events was provided in *Vigil-Giron* and will not be repeated here. *See* 2014-NMCA-069, ¶¶ 3-6, 9, 11-13, 23. As it did in *Vigil-Giron*, the district court rejected the State's argument that various activities and non-activities of the parties that occurred in the interim between the assignment of this case to Judge Murdoch and the July 27, 2011, appointment of a special prosecutor warranted attributing a significant portion of this delay period to Defendant. *See id.* ¶¶ 23-29.

{25} The circumstances and issues in this case in regard to the period of delay from October 19, 2009, through July 27, 2011 are, with very minor differences, the same circumstances and issues that we considered and discussed at length in *Vigil-Giron*. *Id.* For whatever reasons, the State has chosen to reiterate and rely on many of the arguments regarding this time-frame that it raised in *Vigil-Giron*; having already considered them, we decline to do so a second time. Our statement in *Vigil-Giron* that

17

"[w]e agree with the [district] court's assessment[] . . . that while the [ultimately granted] disqualification [of the attorney general] motion, along with many other motions, was pending, the case against [the d]efendant could not have gone to trial[,]" applies equally to the circumstances of this case. *Id.* ¶ 28. We conclude that the State's arguments provide no basis for re-weighing the district court's findings as to the reasons for the delay during this time-frame.

**Weighing and Balancing the Factors**

{26}     The district court weighed the length of the delay heavily against the State, and because the State has not presented that issue for our review, we do not disturb the court's conclusion. *See id.* ¶ 20 (declining, in the absence of an argument in that regard, to consider the district court's weighing of the length-of-delay factor). In regard to the reasons for the delay, the district court concluded that "[a] significant amount of the reason for delay weighs against the State, although not heavily[,]" and having considered the district court's reasoning and analysis, we agree with its assessment. The district court's decision to weigh the assertion-of-right factor "lightly against the State" was not raised as an issue in this appeal, and we, therefore, do not consider it further. *See id.* Finally, having concluded that the district court's view that "Defendant established [that] she . . . suffered actual prejudice as a result of the delay" was supported by substantial evidence, we conclude that the prejudice factor was

18

appropriately weighed against the State.  In sum, with each of the speedy trial factors weighing against the State, we conclude that the district court appropriately dismissed this case on speedy trial grounds.

**CONCLUSION**

{27}    We affirm.

{28}    **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**MICHAEL E. VIGIL, Judge**